UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ROBERT A. B.,[1]

                             Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                             Defendant.

_____

**DECISION AND ORDER**

1:22-cv-66-JJM

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) to review the final determination of the Commissioner of Social Security that he was not disabled. Before the court are the parties' cross-motions for judgment on the pleadings [5, 6].[2] The parties have consented to my jurisdiction [10]. Having reviewed their submissions [5, 6, 7], this action is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

## BACKGROUND

The parties' familiarity with the 1488-page administrative record [4] is presumed. On February 13, 2015, plaintiff filed an application for disability insurance benefits, alleging an onset date of September 13, 2014. Administrative Record [4] at 475. Plaintiff complained of

---

[1]      In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]      Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination.

rheumatoid arthritis in the neck, back, and shoulders; asthma; and high blood pressure. Id. at 512. Plaintiff's claim was initially denied. Id. at 24.

Following an administrative hearing, Administrative Law Judge ("ALJ") Lynette Gohr issued a decision denying plaintiff's claim. Id. at 24-34. Plaintiff appealed to this Court, whereupon the matter was remanded for further proceedings, including the issuance of a subpoena for treatment records from plaintiff's rheumatologist, Danilo Saldana, M.D. *See* Bauer v. Saul, 2020 WL 6785490, *7 (W.D.N.Y. 2020).

## A.    The Hearing

On July 23, 2021, ALJ Bryce Baird conducted a new telephonic hearing. [4] at 664. Plaintiff was represented by an attorney. Id.

At the hearing, plaintiff testified that he had an eighth-grade education and previous employment as a loader/unloader in a warehouse and machine operator. Id. at 690-92. He testified that he was prevented from working by rheumatoid arthritis in his ankles, knees, shoulders, neck, elbow, and back, which kept him in "pretty constant" pain and limited his movement. Id. at 696-701. He was being treated for depression, but stated that the medication "help[s] a lot". Id. at 702-04. Even so, he testified to having "dark" periods lasting for weeks in which he wanted to be left alone, experienced feelings of dread, and had trouble eating and sleeping. Id. at 706-07.

A vocational expert testified that a person of plaintiff's age, education, and experience and with his various limitations would be able to perform jobs that exist in sufficient numbers in the national economy. Id. at 712-13.

**B.    The Medical Evidence**

ALJ Baird considered plaintiff's testimony, his treatment history, and the medical opinions of record. Id. at 667-74. Much of this remains unchanged from the Court's previous decision (*see* Bauer, 2020 WL 6785490 at *2) and will be reviewed here only in relevant part.

On June 3, 2015, Susan Santarpia, Ph.D., performed a psychiatric consultative examination of plaintiff. [4] at 644-47. Plaintiff reported dysphoric mood, anxiety, and irritability, which was exacerbated by his chronic pain. Id. at 644. Dr. Santarpia opined that plaintiff could follow and understand simple directions and instructions, perform simple tasks, maintain attention, and concentration, maintain a regular schedule, learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others, and appropriately deal with stress. Id. at 646. ALJ Baird gave Dr. Santarpia's opinion "great weight", finding it consistent with the overall record. Id. at 667-68.

Also on June 3, 2015, Samuel Balderman, M.D. performed a consultative examination of plaintiff. Id. at 651-54. Dr. Balderman assessed plaintiff with mild limitations for reaching, pushing, and pulling; moderate limitations for prolonged standing and sitting; and moderate limitations for bending and lifting. Id. at 654. ALJ Baird gave Dr. Balderman's opinion "significant weight", finding it consistent with the record as a whole, internally consistent, and well-supported by objective medical evidence. Id. at 673.

On April 8, 2021, Dr. Russell Lee, M.D. performed an internal medicine consultative examination of plaintiff. Id. at 1285-96. Dr. Lee diagnosed plaintiff with rheumatoid arthritis in his back, right shoulder, wrists, fingers, and knees. Id. at 1288. He opined that plaintiff had moderate limitations involving walking, bending, lifting, climbing stairs, and reaching overhead; and that he should avoid respiratory irritants. Id.  In an accompanying

checklist form, he assessed plaintiff with certain lifting, sitting, standing, and walking limitations and noted that plaintiff could "never" perform overhead reaching with his right hand. Id. at 1290-91. ALJ Baird gave Dr. Lee's opinion "limited weight", finding it internally inconsistent and outside the relevant period. Id. at 973.

Plaintiff's treatment records with Danilo B. Saldana from September 2015 through January 2017 were obtained. Id. at 1249-84. Dr. Saldana treated plaintiff for rheumatoid arthritis and pain in his wrist, knees, ankles, lower back, and reduced range of motion in his shoulders, elbows, and knees. Id. at 1249-50. Treatment for those conditions was "conservative" and included various oral medications. Id. at 672.

## C.    The ALJ's Decision

On September 27, 2021, ALJ Baird issued a Notice of Decision denying plaintiff's claim. Id. at 664-75.  He found that plaintiff had the following severe impairments: asthma, rheumatoid arthritis, arthralgia, degenerative disc disease of the lumbar spine, and obesity. Id. at 667. At step two,[3] ALJ Baird found that plaintiff's alleged depressive disorder was "nonsevere" on the grounds that it was adequately managed by his medication. Id. at 667-668.  Reviewing the evidence of record, he assessed plaintiff with no limitations in his ability to understand, remember, apply information, interact socially, concentrate, persist, maintain pace, and adapt or manage oneself. Id. at 668.

Also at step two, ALJ Baird addressed plaintiff's diagnosis of fibromyalgia. Id. at 669. He found the treatment notes from Sadia Ahmed, M.D., failed to satisfy the criteria set forth

---

[3]        "An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. . . . [At] step two[, the ALJ] determines whether the claimant has an impairment, or combination of impairments, that is 'severe' within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities." Hayden v. Commissioner of Social Security, 338 F. Supp. 3d 129, 134 (W.D.N.Y. 2018) (citing 20 C.F.R. §§404.1520(c), 416.920(c)).

in Social Security Ruling ("SSR") 12-2p "as there is no indication . . . that Dr. Ahmed has conducted a tender point examination showing at least 11 positive tender points on physical examination". <u>Id.</u> He noted that, while "trigger point tenderness was noted over the upper extremities bilaterally and the lower extremities bilaterally in December 2019 and November 2020[,] . . . the overall examination record reflects no trigger point tenderness in January 2018, May 2018, August 2018, November 2018, May 2019, September 2019". <u>Id.</u> at 669. He further found "there is no evidence that [plaintiff] suffers from six or more fibromyalgia symptoms, signs, or co-occurring conditions, and his symptoms have been explained by his diagnosis of polyarthritis as discussed below". <u>Id.</u>  He concluded that plaintiff's fibromyalgia was "not a medically determinable impairment". <u>Id.</u>

      ALJ Baird determined that plaintiff retained the residual functional capacity ("RFC") to perform light work, except that he can occasionally carry 20 pounds, frequently carry up to 10 pounds; sit for six hours in an eight-hour workday; stand or walk for six hours in an eight-hour workday; occasional climb ramps or stairs, but never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, or crouch; never crawl; can frequently (but not constantly) reach in all directions other than overhead with the bilateral upper extremities; and occasionally reach overhead with the bilateral upper extremities. <u>Id.</u> at 670-71.

      ALJ Baird found that plaintiff was unable to perform past relevant work, but that he could perform various jobs that exist in significant numbers in the national economy such as hand packager, mail sorter, and ticket taker. <u>Id.</u> at 673-75. Accordingly, he found that plaintiff was not disabled. <u>Id.</u> at 675.

**ANALYSIS**

Plaintiff argues that ALJ Baird's decision was deficient because: (1) he failed to "properly evaluate" plaintiff's depression and fibromyalgia; (2) he failed to reconcile his RFC determination with the limitations opined by Dr. Balderman; and (3) he failed to identify and resolve the conflict between the vocational expert's testimony and the Dictionary of Occupational Titles (the "DOT"). Plaintiff's Memorandum of Law [5-1] at 1, 15-29. I agree in part.

**A.    Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938); *see also* Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Colgan v. Kijakazi, 22 F.4th 353, 359 (2d Cir. 2022) ("[a]lthough . . .  the evidentiary threshold for the substantial evidence standard 'is not high,' . . . the substantial evidence standard is also not merely hortatory: It requires relevant evidence which would lead a 'reasonable mind' to concur in the ALJ's factual determinations").

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920.  The

plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B.    Step Two Determinations: Depression and Fibromyalgia**

Plaintiff first argues that ALJ Baird erred by assessing his depression as nonsevere and his fibromyalgia as "not a medically determinable impairment", and also not accounting for these impairments in the RFC. [5-1] at 15.

**1.    Depression**

An impairment is considered severe when "any impairment or combination of impairments . . . significantly limits your physical or mental ability to do basic work activities". 20 C.F.R. §404.1520(c). Conversely, "[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities". 20 C.F.R. §404.1522(a). While this is not a demanding standard (*see* McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014) (describing the standard "*de minimis*")), it is also not self-fulfilling. The "mere presence of a disease or impairment" or diagnosis "is not, by itself, sufficient to render a condition 'severe'". Herman S. v. Commissioner of Social Security, 577 F. Supp. 3d 190, 195 (W.D.N.Y. 2022) (cleaned up). The plaintiff also bears the burden at step two. *See* Talavera, 697 F.3d at 151.

With respect to plaintiff's diagnosis of depression, ALJ Baird relied heavily on Dr. Santarpia's assessment that plaintiff remained unaffected in his mental ability to perform basic work activities. [4] at 667-68. "Basic work activities" are defined as, among other things, "[u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment;

[r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting". §404.1522(b).

Plaintiff argues that Dr. Santarpia's 2015 opinion is "stale" in light of further mental health treatment in 2018 and 2019. [5-1] at 17-18. "A gap of time between when an opinion is rendered and the disability hearing and decision does not automatically invalidate that opinion; however, such an opinion may be stale if the claimant's condition deteriorates during that time." Majdandzic v. Commissioner of Social Security, 2018 WL 5112273, *3 (W.D.N.Y. 2018). Plaintiff argues that, beginning in August 2018 and continuing through 2019, he treated with Dr. Sazonov and Dr. Ahmed for worsening depression. [5-1] at 16.

Those records reflect that plaintiff complained of depressed mood, feelings of hopelessness, guilt, irritability, and mood swings; however, they do not contain any medical assessment indicating that his ability to perform basic work activities had deteriorated to a level less than that which was opined by Dr. Santarpia. [4] at 1213-16, 1455-56, 1471-87. The records indicated that plaintiff's depression was treated with several medications with occasional success. See, e.g., id. at 1468. At the administrative hearing, plaintiff declined to attribute any functional limitations to his mental health, and stated that his medication helped "a lot". [4] at 706-08. Under these circumstances, ALJ Baird was entitled to rely on the consultative examiner's opinion. See, e.g., Trepanier v. Commissioner of Social Security, 752 F. App'x 75, 78 (2d Cir. 2018) (Summary Order) (ALJ's finding was supported by substantial evidence where the ALJ "largely relied on the report of a consultative examiner"); Barry J. v. Commissioner of Social Security, 725 F. Supp. 3d 312, 322-23 (W.D.N.Y. 2024) ("[b]ecause Plaintiff has failed to identify any specific error in the ALJ's assessment of [the consultative examiner's] opinion,

which is supported by other evidence in the record and his own examination of Plaintiff, remand is not required").

###    2.    Fibromyalgia

ALJ Baird reviewed Dr. Ahmed's diagnosis of fibromyalgia and her treatment notes, and he determined that plaintiff's symptoms failed to satisfy the SSR 12-2p criteria and was thus "not a medically determinable impairment". [4] at 669. Plaintiff contends this was in error. [5-1] at 19-24.

SSR 12-2p describes fibromyalgia as a potentially disabling "complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues." SSR 12-2p, 2012 WL 3104869, *2 (2012). It is a "disease that eludes [objective] measurement". Green-Younger v. Barnhart, 335 F.3d 99, 108 (2d Cir. 2003). Nonetheless, the American College of Rheumatology developed diagnostic criteria in 1990 and 2010, which were both adopted by the Social Security Administration. See SSR 12-2p, 2012 WL 3104869 at *2; Joseph Y. v. Commissioner of Social Security, 2022 WL 125821, *2 (W.D.N.Y. 2022). A claimant must satisfy either the 1990 or the 2010 criteria to establish that he has a medically determinable impairment of fibromyalgia. See Joseph Y., 2022 WL 125821 at *2. Combining those two sets of criteria, the test can be articulated as follows:

> "a physician must diagnose fibromyalgia, the diagnosis cannot be inconsistent with the other evidence in the case record, and the physician must provide evidence of: (1) a history of widespread pain, at least eleven positive tender points on physical examination, and evidence that other disorders that could cause the symptoms or signs were excluded; or (2) a history of widespread pain, repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, and evidence that other disorders that could cause these repeated manifestations were excluded."

Cooper v. Commissioner of Social Security, 2019 WL 1109573, *4 (W.D.N.Y. 2019) (*citing* SSR 12-2p, 2012 WL 3104869 at *2-3).

ALJ Baird found that there was "no indication . . . that Dr. Ahmed has conducted a tender point examination showing at least 11 positive tender points on physical examination". [4] at 669. He further noted that there were several instances in which "no trigger point tenderness" was indicated. Id. (referencing treatment notes dated January 2018, May 2018, August 2018, November 2018, May 2019, and September 2019). He also found "no evidence that [plaintiff] suffers from six or more fibromyalgia symptoms, signs, or co-occurring conditions" and that "[plaintiff's] symptoms have been explained by his diagnosis of polyarthritis". Id.

Plaintiff first argues that ALJ Baird erred by failing to supplement the record, as suggested by SSR 12-2p, by recontacting Dr. Ahmed. [5-1] at 21 (*citing* SSR 12-2p, 2012 WL 3104869 at *4). While the ALJ retains the option to recontact a medical source if he finds there is insufficient evidence to make a determination (*see* id.), ALJ Baird did not make such a finding here. Rather, ALJ Baird reviewed the longitudinal treatment records from Dr. Ahmed, who was the only medical source to suggest fibromyalgia, and found them to insufficiently demonstrate the required criteria. *See* [4] at 669 (*citing* id. at 1399, 1403, 1407, 1411, 1415, 1423). Generally, an ALJ has "no obligation to recontact [a treating source] where there were no obvious gaps in the administrative record and the ALJ possessed [the plaintiff's] complete medical history". Rusin v. Berryhill, 726 F. App'x 837, 839-40 (2d Cir. 2018) (Summary Order).

Plaintiff argues, alternatively, that "it is possible" to interpret the treatment records in manner that would be consistent with plaintiff meeting either of both sets of diagnostic criteria. [5-1] at 22-23. This inquiry is incompatible with a substantial evidence review. "[U]nder

the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with

the ALJ's weighing of the evidence or to argue that the evidence in the record could support [his]

position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's

conclusions based on the evidence in record." Dailey v. Commissioner of Social Security, 2016

WL 922261, *6 (N.D.N.Y. 2016); *see* Brault v. Social Security Administration Commissioner,

683 F.3d 443, 448 (2d Cir. 2012) ("[t]he substantial evidence standard means once an ALJ finds

facts, we can reject those facts 'only if a reasonable factfinder would *have to conclude*

*otherwise*'").

   Nevertheless, there is some tension between ALJ Baird's statement that

"there is no evidence that [plaintiff] suffers from six or more fibromyalgia symptoms" ([4] at

669) and treatment records that reflect plaintiff's complaints of fatigue, difficulty sleeping,

depression, shortness of breath, rash, itching, stiffness, diarrhea, light sensitivity, hair loss,

muscle spasms, and tingling. *See* [4] at 298-99, 325-26, 330, 333, 614, 626, 1067-68, 1167,

1171, 1213, 1217, 1249, 1262, 1352, 1358, 1402, 1455-56, 1471-87.

   As this matter will be remanded on other grounds, the Commissioner should also

review Dr. Ahmed's treatment records against the various fibromyalgia symptoms under the

2010 criteria (*see* SSR 12-2p, 2012 WL 3104869 at *3) and clearly explain which of those

symptoms are substantiated by the evidence, and whether and to what extent those symptoms are

exclusive of other disorders. *See*, *e.g.*, Heineck-Polizzi v. Commissioner of Social Security, 2020

WL 1284017, *5 (W.D.N.Y. 2020) ("[o]n remand, the ALJ is directed to adequately consider

whether Plaintiff's fibromyalgia meets the requirements of SSR 12-2p, and explain her reasoning

for her conclusion . . . [and] ensure that the record is complete as to Plaintiff's fibromyalgia").

C.    **Dr. Balderman's Opinion**

Plaintiff further argues that ALJ Baird erred by failing to incorporate sufficient standing or sitting limitations into the RFC in light of Dr. Balderman's opinion that plaintiff would have "moderate limitations for prolonged standing and sitting". [5-1] at 24-26 (*quoting* [4] at 653). ALJ Baird gave Dr. Balderman's opinion "significant weight". [4] at 673. In his RFC determination, ALJ Baird limited plaintiff to light work with the ability to sit, stand, and walk for six hours of an eight-hour workday. Id. at 670-71.

On appeal, "[t]he relevant inquiry is whether the ALJ applied the correct legal standards and whether [his] determination is supported by substantial evidence". Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013). The ALJ, not any medical source, is responsible for formulating a claimant's RFC. *See* 20 C.F.R. §§404.1546(c), 404.1527(d)(2) and §§416.946(c), 416.927(d)(2); Curry v. Commissioner of Social Security, 855 Fed. App'x 46, 48 (2d Cir. 2021) (Summary Order). Accordingly, the RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision", and the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole". Matta v. Astrue, 508 Fed. App'x. 53, 56 (2d Cir. 2013) (Summary Order); *see* Schillo v. Kijakazi, 31 F.4th 64, 78 (2d Cir. 2022). Ultimately, "[t]he question is . . . whether the ALJ's conclusion was 'supported by the record as a whole'". Nieves v. Commissioner of Social Security, 2019 WL 4565112, *4 (S.D.N.Y. 2019) (*quoting* Tricarico v. Colvin, 681 F. App'x 98, 101 (2d Cir. 2017) (Summary Order)).

Moreover, ALJ Baird's RFC finding is not necessarily inconsistent with Dr. Balderman's opinion. "[D]istrict courts within this Circuit have repeatedly recognized, moderate limitations in prolonged sitting are not necessarily inconsistent with the ability to perform the up-

to-six hours of sitting." Kevin M. v. Kijakazi, 2022 WL 2704527, *2 (W.D.N.Y. 2022). Other

courts have ruled similarly with respect to moderate limitations for long periods of walking,

sitting and standing. See Zacharopoulos v. Saul, 516 F. Supp. 3d 211, 229 (E.D.N.Y. 2021)

(collecting cases). This is particularly true where, as here, the RFC is supported by activities of

daily living demonstrating the ability to perform those tasks. See Rosa v. Commissioner of Social

Security, 2022 WL 2274720, *10 (E.D.N.Y. 2022). For those reasons, I would affirm this portion

of ALJ Baird's decision.

**D.      The Vocational Expert's Testimony and the DOT**

Plaintiff argues that the vocational expert's hearing testimony was materially

inconsistent with the DOT, that such inconsistency was insufficiently addressed by ALJ Baird,

and thus the testimony cannot constitute substantial evidence. [5-1] at 26-30. Specifically, ALJ

Baird's hypothetical to the vocational expert (and his eventual RFC determination) included a

limitation to "occasional overhead reaching" ([4] at 712), but the job titles offered by the

vocational expert in response all required "frequent" reaching with no indication of direction. [5-

1] at 27; see DOT 559.687-074, 1991 WL 683797 (Inspector and Hand Packager); DOT

209.687-026, 1991 WL 671813 (Mail Clerk); DOT 652.685-094, 1991 WL 685764 (Ticket

Printer and Tagger). The vocational expert testified that "the DOT does not make specific

mention to overhead reaching", and that her testimony was "based on [her] education, training,

and experience". [4] at 716. Plaintiff argues that this was insufficient to resolve the conflict. [5-1]

at 28. The Commissioner disagrees. [6-1] at 15-16.

SSR 00-4P states that "[i]n making disability determinations, we rely primarily on

the DOT . . . for information about the requirements of work in the national economy". SSR 00-

4P, 2000 WL 1898704, *2 (2000). "Occupational evidence provided by a [vocational expert]

generally should be consistent with the occupational information supplied by the DOT." Id. "When there is an apparent unresolved conflict between [vocational expert] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict." Id.; *see* Lockwood v. Commissioner of Social Security, 914 F.3d 87, 92 (2d Cir. 2019) ("the Ruling required the Commissioner to probe this apparent conflict before relying on [the vocational expert's] testimony"). The Ruling goes on to say that "[n]either the DOT nor the [expert] evidence automatically 'trumps' when there is a conflict". SSR 00-4P, 2000 WL 1898704 at *2. "The adjudicator must resolve the conflict by determining if the explanation given by the [expert] is reasonable and provides a basis for relying on the [expert] testimony rather than on the DOT information." Id. ALJ Baird's decision states only that "[p]ursuant to SSR 00-4P, I have determined that the vocational expert's testimony is consistent with the information contained in the [DOT]." [4] at 675.

The question presented is whether this exchange and finding are sufficient to reconcile the inconsistency between a limitation to occasional overhead reaching and the DOT indication of frequent reaching. In Lockwood, the ALJ assessed plaintiff with a limitation to no overhead reaching, but the jobs identified by the vocational expert were defined by the DOT to require occasional or frequent reaching. 914 F.3d 87 at 92. The Second Circuit determined that, as reaching is defined as "'extending the hands and arms in any direction'", the inconsistency presented an "apparent conflict that triggers the Commissioner's duty to elicit an explanation that would justify crediting the testimony". Id. (*quoting* SSR 85-15, 1985 WL 56857, *7 (1985)). The Second Circuit held that "it was the Commissioner's duty to elicit an explanation from [the vocational expert] as to whether those occupations actually require overhead reaching". Id. (cleaned up). In that case, the ALJ's inquiry to the vocational expert as to whether this opinion

"was consistent with [the DOT]", and her response that "[i]t is", were insufficient to resolve the conflict. Id. at 93.

In Matthew M. v. Commissioner of Social Security, the district court identified a similar conflict where the RFC included a limitation to "incidental overhead reaching" and the representative jobs indicated the ability for "frequent" or "constant" reaching. 2022 WL 3346949, *4 (W.D.N.Y. 2022). In that case, the vocational expert acknowledged the discrepancy, but testified that "based on his years of experience working as a vocational expert", the representative jobs were consistent with the claimant's RFC. Id. The court found this exchange insufficient to resolve the conflict, suggesting that the vocational expert should have offered some observation, research, or specific job knowledge to support his conclusion. Id. ("[t]he fact that the [vocational expert's] opinion was based on his own 'knowledge and experience' does not resolve the conflict").

Conversely, in Alisa O. v. Commissioner of Social Security, the court held that a conflict between the claimant's RFC limitation to no overhead reaching and the requirements of the representative jobs was adequately addressed by the vocational expert's testimony. 2021 WL 3861425, *5 (W.D.N.Y. 2021). There, "the vocational expert specifically noted that she did take into consideration Plaintiff's overhead reach limitation and indicated that the DOT does not distinguish between reaching overhead, in front, to the sides, and in all other directions . . .  and further[] indicated that her opinion that Plaintiff could perform occupations requiring such reaching abilities was based on her knowledge of how those specific jobs were performed." Id. The court found that "[t]his is precisely the type of analysis that the Second Circuit in Lockwood indicated should have been done by the vocational expert". Id.  In another case, the court approved of a more explicit line of questioning. Arias v. Kijakazi 623 F. Supp. 3d 277, 296

(S.D.N.Y. 2022) ("[i]n the instant case, the ALJ . . . explicitly inquir[ed] about whether [the representative jobs] required frequent reaching or only occasional overhead reaching").

       While it is a close question, I agree with plaintiff that the Commissioner here failed to resolve the conflict between the plaintiff's RFC and the DOT requirements for the representative jobs. To begin, the vocational expert did not actually acknowledge the existence of such a conflict, stating instead that "the DOT does not make specific mention to overhead reaching". [4] at 716. While this is technically true, the Social Security Administration, and the Second Circuit in Lockwood, have held that there is a default understanding that reaching refers to "extending the hands and arms in any direction" SSR 85-15, 1985 WL 56857 at *7; *see* 914 F.3d 87 at 92. Accordingly, the record is unclear as to whether the vocational expert recognized that there was a conflict. In any event, the vocational expert was required to provide some "explanation . . . as to whether those occupations actually require overhead reaching" (Lockwood, 914 F.3d 87 at 92) and to "provide[] a basis for relying on the [her] testimony rather than on the DOT information". SSR 00-4P, 2000 WL 1898704 at *2. She did neither. As the Commissioner bears the burden of proof at step five (*see* Talavera, 697 F.3d at 151), the failure to resolve this apparent conflict leaves the ALJ's decision unsupported by substantial evidence.

## CONCLUSION

       For these reasons, plaintiff's motion for judgment on the pleadings [5] is granted to the extent of remanding this claim to the Commissioner for further proceedings consistent with this Decision and Order, and is otherwise denied, and the Commissioner's motion for judgment on the pleadings [6] is denied.

**SO ORDERED**.

Dated: December 10, 2024

/s/ Jeremiah J. McCarthy
JEREMIAH J. McCARTHY
United States Magistrate Judge